IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARIBA NASSERI, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | No. C 15-04001 WHA <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING MOTION FOR A MORE DEFINITE STATEMENT** |

**INTRODUCTION**

In this foreclosure dispute, defendant moves to dismiss the complaint for failure to state a claim and, in the alternative, moves for a more definite statement. To the extent stated herein, the motion to dismiss is **DENIED**. Defendant's motion for a more definite statement is **DENIED**. Defendant's requests for judicial notice are **GRANTED**.

**STATEMENT**

The following well-pled facts are assumed to be true for the purposes of the present motion. In September 2002, plaintiff Fariba Nasseri purchased property in Danville, California. In 2007, plaintiff refinanced her property, executing a deed of trust and promissory note with defendant Wells Fargo. Between September 2007 and December 2012, plaintiff made timely mortgage payments each month (Compl. ¶¶ 9–10).

Around December 2012, plaintiff's husband lost his job. Although plaintiff alleges she could have continued making her approximately $4,500.00 monthly payments, she hoped to

obtain a more comfortable mortgage payment while her husband remained unemployed. Plaintiff contacted Wells Fargo regarding a forbearance plan (Compl. ¶ 12).

In December 2012, Wells Fargo approved plaintiff's forbearance plan. Pursuant to that plan, between January 2013 and December 2013, plaintiff would make a reduced monthly mortgage payment of $1,050.00. Wells Fargo would keep track of the total amount of unpaid principal and interest that accrued during the plan. That amount would then be due and plaintiff's responsibility to pay after plan completion or when plaintiff's husband became fully employed. Plaintiff could then apply for payment assistance through a loan modification (Compl. ¶¶ 13–14).

The language in the forbearance plan confused plaintiff. She contacted Thomas Clarkson, who served as Wells Fargo's single point of contact assigned to plaintiff and the home preservation specialist indicated in plaintiff's plan. Plaintiff asked Clarkson whether the accrued principal and interest would be immediately due and payable at the end of the forbearance plan. Clarkson informed plaintiff that the accrued balance would not be due and payable immediately upon completion of the forbearance plan, but rather would be added to the loan balance and due at the end of the loan term (Compl. ¶¶ 15–16).

On the basis of that information, plaintiff accepted the forbearance plan. Clarkson set "[p]laintiff's account" so that she could make her plan payment via automatic withdrawal, despite the plan indicating payment by check or phone. From December 2012 to June 2013 Wells Fargo withdrew payments from "[p]laintiff's account" with no problems (Compl. ¶¶ 17–19).

For the July 2013 payment, however, no automatic withdrawal occurred. In August 2013, plaintiff contacted Wells Fargo to inquire about why the previous payment had not been withdrawn. During this call, plaintiff offered to make two plan payments simultaneously — one for July 2013 and one for August 2013 — but Wells Fargo rejected plaintiff's offer. Furthermore, Wells Fargo told plaintiff that the forbearance plan had been canceled because of the failure to make the July payment. Plaintiff requested to resume making her regular mortgage payments — as Clarkson had allegedly informed her she could do. Wells Fargo stated that she could not resume making her regular monthly payments without reinstating her loan. This shocked plaintiff because she had been told that the accrued principal and interest would be added

2

to the end of her loan, not immediately due and payable. Plaintiff alleges that had Wells Fargo told her that the balance would be due and payable immediately upon the end of the plan, she never would have accepted the forbearance plan and would have pursued another alternative (Compl. ¶¶ 20–23).

In August 2013, plaintiff received a reinstatement calculation. Soon thereafter Clarkson informed plaintiff that Wells Fargo could no longer help and that the normal collection process would begin (Compl. ¶¶ 25–26).

Plaintiff then attempted to reinstate her loan pursuant to covenant 19 of the deed of trust. Wells Fargo rejected her reinstatement and told her to apply for a modification. Wells Fargo, however, rejected plaintiff's modification application without ever affording plaintiff an opportunity for review (Compl. ¶¶ 27–28).

In September 2015, plaintiff filed a complaint alleging: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of the implied covenant of good faith and fair dealing; (4) violation of California Civil Code Section 2923.7; (5) violation of California Civil Code Section 2923.7; (6) negligent misrepresentation; and (7) fraud.

Wells Fargo now moves to dismiss the complaint for failure to state a claim and also moves for a more definite statement (Dkt. No. 9). This order follows full briefing and oral argument.

**ANALYSIS**

1. **FAILURE TO STATE A CLAIM.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).

### A. Breach of Contract.

Plaintiff alleges that Wells Fargo breached its obligations under the forbearance plan by failing to withdraw plaintiff's July payment, refusing plaintiff's offer to make the payment via another method, and canceling the forbearance plan.

A claim for breach of contract exists when there is: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. New York Times Company*, 164 Cal.App.4th 1171, 1178 (2008).

*First*, under California law, "[w]here a party relies upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in *haec verba*, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient." *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880). Here, plaintiff has alleged:

> Pursuant to the [f]orbearance [p]lan, [p]laintiff was required to make reduced monthly mortgage payments totaling $1,050.00 between January 2013 and December 2013. Plaintiff could elect to make her payments by check or by phone through Wells Fargo's [e]asy [p]ay service for direct transfer from [p]laintiff's bank account.

(Compl. ¶ 101). Plaintiff states the specific plan allegedly breached and the requirements under that plan. The terms of the contract are sufficiently provided for the purposes of this motion so as to give Wells Fargo notice of the alleged breach.

Next, due to Wells Fargo's actions, plaintiff demonstrates an adequate excuse for nonperformance. Pursuant to Civil Code Section 1511, the failure to perform is excused "[w]hen the debtor is induced not to [perform], by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time." Moreover, "[a] condition is waived when a promisor by his words or conduct justifies the promisee in believing that a conditional promise will be performed despite the failure to perform the condition, and the promisee relies upon the promisor's manifestations to his substantial detriment." *Sosin v. Richardson*, 210 Cal.App.2d 258, 264 (1962).

4

Here, the complaint alleges that Clarkson set plaintiff's forbearance payments for automatic withdrawal. After six months of accepting this form of payment, Wells Fargo suddenly refused to withdraw the payment. Plaintiff sufficiently alleges an excuse for nonperformance and a breach by Wells Fargo.

Lastly, the complaint alleges damages by stating that plaintiff "was ready, willing, and able to continue making her mortgage payments when she contacted [d]efendant Wells Fargo regarding a forbearance plan" (Compl. ¶ 12). In addition, she alleges "increased late fees and arrears, attorneys' fees, overcharge fees, [and] destruction of credit" (*id*. ¶ 106). Thus, plaintiff adequately pled a claim for breach of contract based on Wells Fargo's failing to withdraw plaintiff's July payment, refusing plaintiff's offer to make the payment via another method, and canceling the forbearance plan.

Since plaintiff sufficiently demonstrates that defendant's breached, defendant's motion to dismiss plaintiff's claim for breach of contract is **DENIED.**

### B. Breaches of Implied Covenant of Good Faith and Fair Dealing.

"[T]he authorities hold that breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *California Shoppers, Inc. v. Royal Globe Insurance Co.*, 175 Cal.App.3d 1, 54 (1985). In order to make a claim for breach of the implied covenant, the plaintiff must show that defendant "fail[ed] or refuse[d] to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (1990).

Plaintiff makes two separate claims that Wells Fargo breached the implied covenant of good faith and fair dealing. *First*, plaintiff alleges Wells Fargo violated plaintiff's ability to perform under covenant 19 of the deed of trust by refusing plaintiff's reinstatement offer.

Here, plaintiff and Wells Fargo entered into an agreement to make monthly payments. Plaintiff allegedly performed as the agreement required until missing the July payment. Plaintiff's nonperformance, however, is excused by Wells Fargo's alleged interference.

5

1    Specifically, Clarkson set her payments to automatic withdrawal, despite the plan indicating
2    payment by check or phone. Wells Fargo accepted payment for the following six months, then
3    allegedly refused payment and canceled the plan altogether. Plaintiff attempted to reinstate her
4    loan pursuant to covenant 19 of the deed of trust. Wells Fargo rejected her reinstatement and told
5    her to apply for a modification.

6    Plaintiff has sufficiently alleged facts to state a claim that Wells Fargo unfairly interfered
7    with plaintiff's right to reinstate her loan pursuant to covenant 19.

8    Wells Fargo argues that plaintiff's claim fails because the tort of bad faith breach of the
9    implied covenant does not extend to financial institutions. Plaintiff, however, does not claim a
10   tortious breach of the implied covenant of good faith and fair dealing. Rather, plaintiff's claim is
11   for a contractual breach of the implied covenant of good faith and fair dealing.

12   Wells Fargo also argues that plaintiff cannot claim breach of the implied covenant of good
13   faith and fair dealing since it is contrary to the plain terms of the deed of trust. Not so. "The
14   covenant is implied as a supplement to the express contractual covenants, to prevent a contracting
15   party from engaging in conduct that frustrates the other party's rights to the benefits of the
16   agreement." *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal.4th 1, 36 (1995). Here, plaintiff
17   alleges Wells Fargo interfered with her ability to reinstate her loan pursuant to covenant 19 of the
18   deed of trust by rejecting her reinstatement offer. Plaintiff sufficiently alleges facts to
19   demonstrate Wells Fargo hindered her ability to perform under the deed of trust.

20   *Second*, plaintiff claims Wells Fargo violated the implied covenant of good faith and fair
21   dealing by interfering with plaintiff's ability to perform under the forbearance plan. Specifically,
22   plaintiff argues that Wells Fargo interfered with plaintiff's ability to make payments on the loan
23   pursuant to covenant 1 of the deed of trust by failing to withdraw plaintiff's July payment and
24   refusing plaintiff's offer to make the payment via another method. This claim, however, is
25   duplicative of plaintiff's breach of contract claim. The undersigned has previously held that
26   "absent those limited cases where a breach of a consensual contract term is not claimed or
27   alleged, the only justification for asserting a separate cause of action for breach of the implied
28   covenant is to obtain a tort recovery." *American Marine Corporation v. Blue Shield of*

6

*California*, No. C 11–00636, 2011 WL 1399244, *3 (N.D. Cal. Apr. 13, 2011) (quoting *Careau*, 222 Cal.App.3d at 1395). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seeks the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau*, 222 Cal.App.3d at 1395.

So too here. Plaintiff's claim is for a contractual breach of the implied covenant, not a claim for tortious breach. In addition, the factual allegations made in this claim mirror the allegations as made in the breach of contract claim. Thus, plaintiff's claim is subsumed under her breach of contract claim, and plaintiff shall pursue her covenant theory through her contract claim. The jury will be instructed that the contract includes the covenant of good faith and fair dealing.

For the foregoing reasons, defendant's motion to dismiss plaintiff's first claim for breach of the implied covenant of good faith and fair dealing is **DENIED**. The separate claim based on the implied covenant of good faith and fair dealing will be treated as part of the contract claim and otherwise will be deemed surplusage.

### C.     Claims Pursuant to California Civil Code Section 2923.7.

The California legislature passed Civil Code Section 2923.7 as part of its attempt "to eliminate the practice of dual tracking and to ameliorate its effects, by requiring lenders and loan servicers to designate a 'single point of contact' for each borrower in default." *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872, 904 (2013). Section 2923.7 requires that when a borrower requests a foreclosure prevention alternative, the lender shall establish a single point of contact. This provision is specifically "intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley*, 213 Cal.App.4th at 905.

Plaintiff makes two separate claims pursuant to Section 2923.7. Plaintiff's *first* claim alleges that Clarkson violated his duties as the single point of contact by setting plaintiff's account to automatic payments — in contrast to the agreement language — and then failing to inform plaintiff that she could no longer make automatic payments. Among other things, the

7

single point of contact is responsible for, as Section 2923.7(b)(3) states, "[h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative."

Neither our court of appeals nor any California courts of appeal have ruled directly on whether a single point of contact's failure to set up a plaintiff with the correct type of payment method violates Section 2923.7(b)(3). In addition, case law provides little guidance since this statute only became effective on January 1, 2013. The plain language of Section 2923.7(b)(3), however, indicates that the single point of contact is supposed to have general information regarding the status of the foreclosure prevention alternative. Here, taking plaintiff's allegations as true, Clarkson failed to accurately and adequately inform plaintiff of the proper method of payment under the foreclosure prevention alternative.

Wells Fargo argues that Section 2923.7(b) does not prescribe that a single point of contact has a duty to monitor a borrower's forbearance payment. Specifically, Wells Fargo states that "Section 2923.7 does not impose a duty on the single point of contact to describe the foreclosure process, answer questions in a timely and effective manner, and [provide] updates on the status of [a borrower's] home." *Coredo v. U.S. Bank, N.A.*, No. 14CV1709, 2014 WL 4658757, at *5 (S.D. Cal. Sept. 17, 2014) (Judge Michael Anello). Our plaintiff, however, alleges facts that Clarkson failed to accurately inform her of the proper payment method in order to avoid default. These allegations are sufficient to state a claim for violation of Section 2923.7. This holding is not only in line with the intended purpose of Section 2923.7 — preventing borrowers from being given the run around — but also consistent with the language of the statute.

Plaintiff's *second* claim alleges Wells Fargo violated Section 2923.7 because, despite a loan modification not being an available alternative, Clarkson advised plaintiff to apply for a loan modification rather than reinstate her loan. Specifically, plaintiff claims a violation of Section 2923.7(b)(1), which provides that "[t]he single point of contact shall be responsible for . . . [c]ommunicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options." Here, plaintiff applied for a loan modification based on Clarkson's advice. Wells Fargo

8

1  later denied this modification since "the loan had exceeded the amount of modifications allowed
2  by the investor" (Compl. ¶ 28). Plaintiff alleges that Clarkson, as the assigned single point of
3  contact, knew, or should have known this fact when he advised plaintiff to apply for a loan
4  modification rather than reinstate her loan.

5       Plaintiff sufficiently states a claim for a violation of Section 2923.7(b)(1) based on the
6  allegations that Clarkson provided incorrect information regarding what foreclosure prevention
7  alternatives were available to her. In addition, the Court is inclined to agree with the further
8  allegation in the complaint that Clarkson knew or should have known "the loan had exceeded the
9  amount of modifications allowed by the investor" (Compl. ¶ 28).

10       Wells Fargo argues that plaintiff's claim mischaracterizes the nature of the written
11  forbearance agreement and that "[t]ypically [a] failure to make a timely payment terminates a
12  forbearance agreement" (Mot. at 5). This, however, is a factual dispute which is improper on a
13  motion to dismiss.

14       Wells Fargo also argues that it owed no legal duty of care to plaintiff. The Court holds
15  that this contradicts the statutory language of Section 2923.7(b)(1), which states that "[t]he single
16  point of contact shall be responsible for . . . [c]ommunicating the process by which a borrower
17  may apply for an available foreclosure prevention alternative." This also contradicts the purpose
18  of the statute, which is to prevent borrowers from being given the run around. These allegations
19  are sufficient to state a claim for violation of Section 2923.7.

20       For the foregoing reasons, defendant's motion to dismiss plaintiff's first claim for
21  violation of Section 2923.7 is **DENIED**. Defendant's motion to dismiss plaintiff's second claim
22  for violation of Section 2923.7 is **DENIED**.

### D.    Claims for Misrepresentation.

24       Plaintiff next makes claims for fraud and negligent misrepresentation. Both of these
25  claims are based on allegations that Clarkson negligently misrepresented the terms of the
26  forbearance plan by informing plaintiff that the accrued balance would not be immediately due
27  and payable at the end of the plan and rather would be added to the loan balance.

9

The elements of a fraud claim are: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). Unlike fraud, a claim for negligent misrepresentation "does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 230–31 (2013).

Rule 9(b)'s heightened pleading standard applies to both claims, as they are both based in fraud. The requirements of Rule 9(b) are that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, plaintiff's complaint alleges sufficient facts to assert claims for fraud and negligent misrepresentation. The complaint alleges that on or about December 14, 2012, plaintiff discovered that she had been approved for the forbearance plan. Around that time Thomas Clarkson made an allegedly fraudulent statement. The complaint alleges that Clarkson "unequivocally stated that the accrued balance would not be due and payable immediately upon completion of the forbearance plan but, rather, would be added to the loan balance and due at the end of the loan term" (Compl. ¶ 16). Clarkson made this statement in his capacity as the plaintiff's single point of contact and the home preservation specialist as indicated in the plan. Although a specific date is not provided for the allegedly fraudulent statement, this order holds that the allegations are sufficient to give Wells Fargo notice of the claim. These allegations are sufficient under the Rule 9(b) standard.

Wells Fargo objects on several grounds. *First*, it argues that plaintiff pleads no facts showing damages or reliance to support her fraud claims. Not so. The complaint sufficiently alleges damages and reliance by stating that she "was ready, willing, and able to continue making her mortgage payments when she contacted [d]efendant Wells Fargo regarding a forbearance plan" (Compl. ¶¶ 73, 87). She further alleges that had Clarkson stated "that the accrued balance

10

would *not* be immediately due and payable" she "would have simply continued making her mortgage payments, moved out of the property, and rented the property for income" (*id*. ¶¶ 79, 93). She also alleges, among other things, "excessive late fees and charges, attorneys' fees and costs to save [her] home, the loss of [her] home if sold, a loss of reputation and goodwill," severe emotional distress, fear, and depression (*id*. ¶¶ 81, 96). Plaintiff has adequately pled a claim for damages and reliance.

*Second*, Wells Fargo argues that under California law a claim for promissory fraud requires plaintiff to allege facts that create a reasonable inference of deceptive intent. Wells Fargo cites to *Mat-Van, Inc. v. Sheldon Good & Company Auctions, LLC*, No. 07–CV–912, 2007 WL 2206946, *6 (S.D. Cal. 2007) (Judge Irma Gonzalez), to support this proposition. There, the parties entered into a contract agreeing to auction the plaintiffs' three resort islands. The defendants made certain representations of the manner in which the auction would occur — including the contribution requirements for sellers and the amount of money to be spent on marketing. These representations, however, turned out to be false. The plaintiffs filed suit claiming fraud and breach of contract. *Mat-Van* is distinguishable. Our defendant made statements that were allegedly fraudulent at the time they were made. At this stage in the proceedings it is sufficient that Clarkson, who was supposed to know what he was talking about, told her the exact opposite of what the bank wound up doing to her. This blatant contradiction is enough to meet the heightened pleading standard for a claim of fraud.

Next, Wells Fargo argues that plaintiff's claims fail because they owed plaintiff no duty of care. Wells Fargo cites to *Nymark v. Heart Federal Savings & Loans Association*, 231 Cal.App.3d 1089, 1096 (1998), to support the proposition that financial institutions generally owe borrowers no duty of care in connection with making or servicing loans. There are, however, exceptions to this rule. Pursuant to California Civil Code Section 1710(2), a lender owes a duty to a borrower not to make negligent misrepresentations of fact. In other words, under California law, "a lender . . . owe[s] a duty to a borrower not to make material misrepresentations about the status of an application for a loan modification or . . . foreclosure sale" and other factual misrepresentations. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 68 (2013).

11

Lastly, Wells Fargo argues that this claim is barred by the statute of frauds. Wells Fargo cites to *Secrest v. Security National Mortgage Loan Trust 2002-2*, 167 Cal.App.4th 544, 552 (2008), to support the proposition that a forbearance agreement is subject to the statute of frauds. Yet, as the undersigned has previously held, "that decision in no way created a categorical rule that exceptions to the statute of frauds never apply to such agreements." *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10–03892, 2011 WL 1134451, *4 (N.D. Cal. Mar. 28, 2011).

Here, an exception applies. Under California Civil Code Section 1698(b), "[a] contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." The complaint alleges that Clarkson set automatic payments from plaintiff's account and Wells Fargo proceeded to accept this form of payment for the following six months. The parties therefore agreed to automatic payments from plaintiff's account and proceeded to execute that agreement for some time thereafter. Plaintiff consequently relied to her detriment on this modification and proceeded to make payments in this manner for the following six months until, to her surprise, the payments were not accepted. In other words, Wells Fargo tricked plaintiff into authorizing automatic monthly withdrawals as the mode of payment and, after six months of accepting such automatic withdrawals as payments, did a one-eighty and refused the seventh and immediately asserted a breach. If true, this would be unconscionable.

The Court has noticed in many previous cases involving Wells Fargo that the bank is eager on a Rule 12 motion to dismiss to lay all manner of factual information before the Court when it helps the bank. In this case, the bank has failed to present any information that contradicted the complaint. At oral argument, however, a factual dispute arose regarding whether plaintiff had been transferring money via telephone calls. The Court recommended and will proceed with an evidentiary hearing on this issue.

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims for fraud and negligent misrepresentation are **DENIED**.

**2. MOTION FOR A MORE DEFINITE STATEMENT.**

Although defendant's motion is captioned in the alternative as a motion for a more definite statement, defendant does not analyze Rule 12(e) in the separate section it lays out in its

motion. Moreover, the complaint is not so "vague or ambiguous that the party cannot reasonably prepare a response." FRCP 12(e).

For the foregoing reasons defendant's motion for a more definite statement is **DENIED**.

### 3. JUDICIAL NOTICE.

Under FRE 201, a court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned. Here, Wells Fargo requests judicial notice of various public records. Plaintiff has not opposed. The requests for judicial notice are **GRANTED**.

## CONCLUSION

For the foregoing reasons: defendant's motion to dismiss plaintiff's claim for breach of contract is **DENIED**; defendant's motion to dismiss plaintiff's first claim for breach of the implied covenant of good faith and fair dealing is **DENIED**; defendant's motion to dismiss plaintiff's second claim for breach of the implied covenant of good faith and fair dealing will be treated as part of the contract claim and otherwise will be deemed surplusage; defendant's motion to dismiss plaintiff's first claim for violation of California Civil Code Section 2923.7 is **DENIED**; defendant's motion to dismiss plaintiff's second claim for violation of California Civil Code Section 2923.7 is **DENIED**; defendant's motion to dismiss plaintiff's claim for negligent misrepresentation is **DENIED**; defendant's motion to dismiss plaintiff's claim for fraud is **DENIED**.

Defendant's motion for a more definite statement is **DENIED**. Defendant's requests for judicial notice of exhibits 1–6 are **GRANTED**.

**IT IS SO ORDERED.**

Dated: November 23, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13